I'm Daniel Kaplan. I represent the appellant Kendrick Begay. I'm going to try and watch my time and reserve five minutes for rebuttal. At the trial, in this case, the government's approach to the question of premeditation was to argue to the jury in the closing argument that intent to kill is equivalent to premeditation. As the panel in this case pointed out, that's not correct. Intent to kill shows malice of forethought, but not premeditation. At the initial appeal in this case, the centerpiece of the government's approach to premeditation was to state that there was evidence in the record about Mr. Begay's demeanor at the time of the shooting, that his demeanor was calm, methodical, and thoughtful, and that established premeditation. As the panel in this case pointed out, there is no such evidence in the record. Now, at this en banc stage of this case, the government's approach in its en banc petition is essentially to say that if all conceivable inferences in favor of premeditation that can be drawn from the evidence are drawn the way the government would like them to be drawn, there is some evidence that tends to indicate premeditation. That also is not correct. And the reason is that that has been rejected in a line of cases going all the way up to the Supreme Court. I understand why you need all permissible inferences. Why isn't it enough that the guy is seen talking to the two victims, or the future victims. He then walks back to his truck, pulls out a long gun, walks back, and shoots him. Why isn't that alone enough to show premeditation? He takes action of going back to get a weapon that is capable of being used for killing people, and in fact, he uses it to kill people. Why isn't that enough? And for just forgetting anything else, demeanor, calmness, anything else? The law recognizes that there are at least three different interpretations of the act of what you're describing, grabbing the gun and coming back and shooting it. I'm sorry? There are at least three different interpretations of facts like that, what kind of a homicide that could be. But if one of them is that you premeditated, why isn't the government entitled to that inference in terms of the standard of review here? Because there's nothing about those facts, as the Chief Judge just stated them, that tends to show that there was, in fact, premeditation. It could have been a killing on impulse, which would, of course, be second-degree murder. Is there something about that set of facts that says premeditation is not a possible inference? No. So what Judge Calhoun's question is, and my question is, if that's a possible inference, why isn't that for the jury? The jury here heard it, and that's the inference it drove. It was a permissible inference. Why isn't that the end of the case? All the way back to Jeff. On this issue. On this issue. On this issue. We can talk about the argument of the prosecutor and all that separately. Going all the way back to Jackson v. Virginia, at the same time that the Supreme Court issued its seminal ruling on what sufficiency of the evidence is, it also first said that it was definitively rejecting the sum evidence standard. Sum evidence, evidence that passes the Rule 401 standard of making guilt slightly more probable and makes it admissible and relevant, is not good enough. I think you've crossed that bridge. When you say that's a permissible inference, that's not like saying, you know, these were Martians that came down. Oh, it's possible. This is a permissible inference. Why is this? I mean, you know, when you say it's a permissible inference, that means it's an inference that one can permissibly draw from these facts. I'm not saying it's a permissible inference. I'm saying... Okay. I don't need to put a word in your mouth. I'm trying to get an answer. Okay. The answer I'm giving you is that I'm not disputing the idea that those facts could be, they would be deemed, they are deemed relevant, okay? They would be admissible in the trial as tending to go toward premeditation. They are not nearly enough to make the inference permissible that he actually premeditated. Why not? Had time to deliberate? Yes. I believe he had time. And if he had the time, why can't a jury presume that while he's walking back from the car to the truck that he was thinking about what he was doing? There's no evidence to support that. Well, he wasn't stroking his chin in thought, but, I mean, his behavior appears to be goal-directed. He had a conversation in the car. You said he had the time to deliberate. He goes back and gets a gun and goes back. Why isn't that at least permissible that he was thinking about what he was doing when he was walking to the truck? Well, as the D.C. Circuit pointed out in the Austin case, which was discussed in the panel decision, time to premeditate is not sufficient. It still leaves nothing but a speculative leap to say there was premeditation. What more would you have needed, him talking out loud or leaving a note or something like that? Well, for example, anything in those classic three categories that the panel discussed, which typically have been required to show premeditation, motive, planning, the manner of killing being something which tends to indicate that there was premeditation. Well, how about all the shots, then, if you want to talk about the manner of killing? The number of shots is quite consistent with a killing that was done in a rage or in a passion. Well, is it also consistent with you planned to get the job done? Yeah, but in and of itself. Okay, then why isn't that a permissible inference that the government would be entitled to? Why? Because on this evidence, the jury can only speculate that the number of shots were somehow executing a plan. In fact, it's more consistent with a shooting in a rage. Well, I find it hard. I guess from the standpoint when you're saying that, yeah, you could, it could be both, but Mr. Begay didn't testify, so we don't, you know, we can't speculate as to what he would do. But when people are, you know, two people in a car looking at the business end of a That certainly doesn't seem accidental. I mean, that seems an inference that a jury would be able to make. Well, Your Honor, the testimony was that there were eight or nine shots, and two or three of those missed, even though he was standing only three to four feet away. And he had a collection. He had some guns. He had numerous guns. He had numerous rifles. He had gone shooting with his friend Lauren Clark at least a couple of times. The fact that he misses a couple of times, two or three times, suggests that he's not acting in a very calm and deliberate way, the way someone who's premeditating would do. Well, that's a good argument to the jury. I mean, that's what, but then on the other side of it, that, I mean, I've seen cases where officers are trying to shoot someone, and they unload their whole magazine, and they don't hit a darn thing. And I mean, you know, just because someone's a bad shot doesn't mean that they aren't planning to do something. Well, Your Honor. Have you ever gone to the gun range and missed a target altogether? I'm sorry? Have you ever gone to the gun range and missed a target altogether? I do it all the time. Just nothing. You pull it back. There's not a hole there. Again, this is, this is, it's speculation. That's the essential problem. We're speculating. Maybe he's a bad shot. You know, maybe he missed. The jury had nothing but speculation to say. What do we do with the prior incidents? Do we ignore the fact that these two cars engaged in activity, the driver's driving them, obviously, but that is inconsistent with just an unplanned get-together? In other words, why do two cars coming at each other on a highway make U-turns and then pull off together onto a side road? That's not normal highway behavior. If you wanted to flip somebody off and they both got angry and whatever, there's no evidence that people boiled out of the cars and started shouting and yelling. So can the jury take those circumstances into account and say, you know, this is more than just a happenstance meeting and there must have been something going on between these? I mean, yes, it's speculation, but it's a fact, isn't it? It's something that the jury would weigh into the balance? These are facts that the jury certainly could weigh and that the court can weigh in deciding whether there was sufficient evidence, but I would seize upon what you said about it being speculation. It is speculation. What's the difference between speculation and permissible inference? Well, the court addressed that in the Juan H. case, which I filed with the 20HA letter last week and which was cited with approval in this court's on-bank decision in Nevels that came out towards the end of last week. It said in that case that permissible or reasonable inference, which is the only type that is reasonable, is the one that's supported by a chain of logic. It's not mere speculation dressed up in the guise of evidence. And what we're essentially doing here is trying to make that distinction. And all there is in this record, in terms of finding premeditation and deliberation, is what counts as mere speculation in the guise of evidence. Nothing you can back up with a chain of logical inference, nothing you can back up. It isn't – when you say that Jackson v. Virginia rejected the sum evidence rule, what you're saying is, as I understand it, that the beyond a reasonable doubt requirement plugs in here someplace, i.e., that there has to be enough evidence that somebody could think it was beyond a reasonable doubt, right? So what I'm having trouble with is it seems to me that the facts that have been talked about would tend in the direction of showing that there was premeditation, or could if somebody chose to infer it in that direction. But the question is, what is the sort of the – how does the inference role play and interact with the beyond a reasonable doubt standard? I mean, is what you're really saying is, yes, you could infer that it's a – you could say that these things support it, but they don't support it beyond a reasonable doubt? Is that what you're saying? Well, essentially, that's what I'm saying. And I'm also saying that there are – these are facts which would fit into a case for premeditation if more facts or a different type of facts were also present. As the panel pointed out, if there were facts in this record which tended to show planning, a manner of killing which suggested premeditation, or even just motive, if there were any of that together with these other facts, then the jury could get to the stage where it could reach that inference of premeditation without just making – going back to the car and retrieving the rifle enough to show planning. Because there's nothing about that that suggests planning. I mean, it – Could you – The people in the car – are the people in the car armed? Beg your pardon? Are the people in the car armed? There's no evidence that they were. All right. So why isn't going back to the car to get a gun when you have unarmed people in the car? Why isn't that another fact? It's a fact that indicates that some – at that point, apparently at that point, he developed the intent to kill, went and got the gun, and came back and did it. Now, intent to kill would get you to second-degree murder if he were provoked by something that happened while he was standing next to the car, maybe – Well, but if there are no – there are two dead people and there's no weapons in the car, that – you know, I think an inference from that is that no one pulled a gun on him. So an inference that the government would be entitled to at that point. He ascertains that they don't have guns. Then he goes back to the car to get the gun. He knows, you know, he's bringing a gun to a knife fight or anything – or something less. So, you know, why isn't that enough? There was no – there was no argument of self-defense here. There was no claim that this was anything like an accidental killing. That's only enough to get you to what was already the bottom line, the starting point of there was an intentional – apparently an intentional homicide which could have been provoked. You said more. You said he developed an intent to kill. It's one thing to say he's there at the car. He pulls out a gun instantaneously, kills him, and it's intentional. But when he develops an intent to kill, why isn't that premeditation? He develops an intent to kill. He goes to get his gun. He says, you know, I can't kill him with my bare hands. So I'm going to go get the gun and I'm going to carry out that intent. Why isn't the development of the intent and then the action of going and getting the weapon, why isn't that premeditation right there? Because still it only gets you to second-degree murder or potentially voluntary manslaughter. The intent to kill – I wasn't talking about that. I'm asking premeditation. Why isn't developing an intent to kill and then acting upon it by going to go fetch a gun to carry out that intent, why isn't that premeditation? Because, again, really that only shows that there was an intent to kill that he executed on in just the time it took. There was testimony about how far the cars were apart. The witness stated that it was – It doesn't matter if they are across the street from each other. The point is he's there. He's talking to them. He goes to fetch his gun and comes back to shoot him. Why isn't sort of turning around, going to your car to get the weapon, coming back with it and pulling the trigger? Why isn't that premeditation right there? How much premeditation do you need? There's nothing about that that shows that he's acting with a cool mind, capable of reflection, and that he is, in fact, reflecting. That's the answer. He also addressed the fact that – I was really struck that he originally went and spoke on the driver's side and then walked back, reached under his car, got the gun, and then walked around to the passenger's side, where Toloman, I guess, was sitting, and then shot that way. And that definitely seems some planning. He didn't just go right back. He went around the car to the other side. Well, again, you know, it's not enough to really be able to make a solid inference that he was planning. It's simply the distance between the two cars was, according to the testimony, comparable to the distance from the lawyer's podium to the witness stand in the courtroom. Does going around the car to the other side of the car fit in with your theory that there was no planning? There could have been provocation while he was standing by the car, which was – he might have been provoked by the victim that he shot at, the passenger. Can someone in your argument – That's why – and the gun – Can someone in your argument about provocation entirely, that there may have been provocation, but there's no evidence of that. Judge Wardlow, I can't hear you. Could you just – please, I'd like to hear the question. Can you hear me? I can hear you. Thank you. Okay. Isn't – you keep saying there could have been provocation, but isn't that entirely speculative also? I mean, there – what's the evidence of provocation? Well, the strongest affirmative evidence of provocation were two things. First of all, as we discussed, he missed two to three times from only three to four feet away, and there was evidence that he had multiple guns. Why is that evidence of provocation? Because it suggests he's shooting in a rage, not calmly. Why? I still don't understand why shooting in that manner is shooting in a rage. A person who's overcome with passion and rage wouldn't be – wouldn't be holding the gun very still or thinking clearly enough to think, I should just make him get out of the car and put it up against his head and do it cleanly, et cetera. I mean, that seems to be speculation on speculation now, not only beginning with the provocation Judge Wardlow talked about, but now you're sort of adding. It seems to me that you use inference and speculation interchangeably, depending on whether it helps your case, which seems to go back to could a reasonable juror make the inference. So I want to start way back. It seems to be evidence from the female witness that they were at the same party, correct? The victims and the defendant? Yes. No, actually, that – Is that unclear, or what is your view on that? I didn't – I didn't see anything in the record which suggests the victims were at the party. Okay. And what about the flashing lights on the highway? I mean, that suggests an effort. Do you think it's a reasonable inference that when somebody flashes their lights at you, that they're directing it at your car? Yes. And there was nobody else on the road at the time. And nobody else was on the road. And the flashing of the lights basically caused both cars to kind of turn around and then come back together on this little side. First they passed each other, and they both turned around. Then the gay flashes lights. Then he flashes his lights, and then they come together. Yeah. So starting with that, he is targeting this car. Maybe not for murder, but he's targeting the car, correct? It appears that he had some business he wanted to take up with people in the car, yeah. So that begins the chain of events, right? Okay. Yes. Okay. So in your view, what would he need if you had no words spoken, either because nobody heard them and we don't have anybody testifying? What, in your view, in this circumstance, would you need to meet the planning problem? You said you need more evidence. Look at practically any of the cases that the government cited in its rehearing petition. Every one of those involved facts like procuring the knife weeks ahead, like disabling the victim's car, anything like that could have shown planning as an example of that type of premeditation evidence. And you don't think planning can, if you have time to cogitate, which you've indicated there is, you don't think it's sufficient planning to be talking to someone and then to affirmatively, instead of going back to your car and driving away, you affirmatively go back, you pick up the gun, and you carry it back to the car. That's not planning? There's nothing about that which suggests it's planning as opposed to a killing on impulse or a killing under provocation. So all three of those would be permissible inferences? Well, all three of those are consistent with that evidence. And there's nothing about the evidence which allows a jury beyond a reasonable doubt to pick the premeditation interpretation. Okay. So they're consistent with the evidence, but then there's more evidence than just the picking up of the gun. So then is the question, going back to Judge Berzon, are you really arguing the inferences are consistent but not strong enough to meet beyond reasonable doubt? Is that what you're saying? Yes. The inferences, just like in the Juan H. case, just like in the Penagos case, both of which are still good law after this Court's Neville's decision, the inferences are just unduly speculative. There's just not enough there. No, but that's different. I mean, each inference – first of all, an inference can be a stronger inference or a weaker inference. In other words, one of the examples that somebody gave you where they said if you don't see any guns in the car afterwards, is there an inference that these people have no guns? That's still an inference, but it's a very, very strong inference. Right? If, on the other hand, if somebody goes back to get the gun and then comes back, there is some inference that he may have planned it, but it's not – it doesn't eliminate many other possibilities. So there are strong or weaker inferences, first of all. Is that right? That's correct. And then there are the aggregation of the inferences, i.e., whether the inferences, once you've made them and given their strengths or weakness, how – whether they add up to beyond a reasonable doubt. And to keep saying that each one of them isn't enough is not the solution. The question is whether, given the strength of the inferences and their aggregation, could somebody find beyond a reasonable doubt? And you haven't really addressed that question. Well, I agree with you. And I think that – But you keep knocking down each individual one, and that's not helpful. Well, I'm addressing each individual one because logically it's necessary to discuss them. But even – I agree with you that there's a further hurdle the government has to pass here. The evidence – the individual inferences have to be something that gets you up to, you know, the point where it's not just speculation. And then at the second stage of the Jackson analysis under Nevels, you have to ask is this more than a modicum. But even if they can't have speculation, they can still be weak, right? Absolutely. And if you get to the second stage, and all you have is a handful of weak inferences and what amounts to a modicum of barely relevant evidence, it's not good enough for a reasonable person to find premeditation beyond a reasonable doubt. And I think that this evidence would fail under the first threshold and would also fail if it passed that under the second threshold. Is there any evidence of provocation? The evidence that indicated provocation was two things. The affirmative evidence, the strongest affirmative evidence, was essentially, again, the missing two to three times out of eight to nine shots. That's your evidence of provocation, that the guy missed? The fact that he was only three to four feet away, apparently an experienced shooter, and he missed. What other evidence of provocation do you have besides the fact that the guy missed a couple of shots? The fact that he was standing for about a minute by the side of the car before he apparently developed the intent to kill suggests that there must have been provocation or there could have been provocation at that point. Now, if I could turn to the second issue, which is the lesser-included instruction, assuming that the Court would have found that this evidence gets over the threshold that it was enough for a jury to find beyond a reasonable doubt that there was premeditation, it would clear that threshold without a lot of space to spare, I would expect. Didn't trial counsel tell the judge that there was no evidence of provocation at ER 32? Yes, but that's not the standard. First of all, it's not true, because there was the missing two to three times, which is evidence of provocation, and the apparently talking for a minute before devising developing the intent to kill. But it's an abuse of discretion standard, and generally your client did not testify. Had your client, you know, I mean, I would say, you know, obviously if your client had testified and said, we argued, you know, I was frightened, any number of things, then, you know, then the Court really put in a situation where there's some evidence that there was something going on. But here, that there, you know, on an abuse of discretion, I'm not sure how we can say that the Court was required to give that instruction when your client didn't testify, didn't put any provocation, the lawyer that was there said there's no evidence of provocation. How can we say that the district judge abused his discretion? The lawyer was not correct about that. The standard is if there's some evidence, this Court is not permitted to weigh the evidence and decide whether it is convinced that the missing two to three times tends to suggest a provocation. With regard to the second degree murder, the provocation would be helpful but doesn't matter. Is that right? I think that's correct. Whereas as to voluntary manslaughter, that's the only way you would get there. Is that right? Well, technically, you can also get there with an irrational state of mind. That's the Kleeman case. But the evidence we can see doesn't suggest that he was irrational. The other way is if you think you have the right to defend yourself, but you don't really. Right? That's one. I think that'll get you there, too. But again, the evidence doesn't tend to support that either. The person clearly holds the belief that they were defending themselves,  That's one way. And the other has to be provocation, right? That they're responding in a heat of passion. Right. And there was some evidence. Again, this Court is not permitted to weigh the evidence and decide whether missing two to three times should be good enough for them if they were jurors. It only is supposed to ask whether there is some evidence which a jury could seize upon to decide that there was provocation. And there was the missing, and there was the apparent conversation which apparently gave birth to the intent to kill. Beyond that, even if there weren't that affirmative... Would the burdens be different on the second degree murder and on the voluntary murder with respect to provocation? As I understand what you're saying as to second degree murder, is that the government has to produce something that demonstrates that it was premeditation rather than heat of passion. And so the possibility of provocation in that point isn't something you have to demonstrate. It's just that the government would have to negate it and or provide something else that would give you... demonstrate that he was acting with a cold mind. But as to voluntary manslaughter, isn't it burned on you as to the provocation? Well, I believe the law, the case law indicates that the defendant, if he raises the question of provocation, then the burden is on the government to show there wasn't provocation. All right. Did he raise it? And he didn't raise it. So that's not what I'm relying on here. What I'm relying on is cases going back to the Stevenson case in the Supreme Court that say regardless of what the defendant raises, if there was some evidence which would have enabled a rational jury to find that it was voluntary manslaughter, that instruction must be given. There is no weighing the evidence. There is... There is no weight to instruct if there's evidence that would indicate that that should be there. But that doesn't mean speculation upon speculation upon speculation. I mean, it has to rise to a certain level, exactly what that level is here. And here, when the defendant didn't put anything on, said there's no provocation and it's an abusive discretion standard, it seems to me you're pushing a pretty heavy rock uphill. I just want to make one more brief comment and save the rest of my time responding to that. This Court's decision in Hernandez as well as the Quintero decision and the D.C. Circus decision in Comer, they all dealt with kind of a black box scenario. There was no affirmative evidence tending to show that the lesser was correct. But there was just a black hole. There was a mystery there. And in cases like that, like this, arguably, the instruction for the lesser included must be given. In Quintero, they said even if it's unclear about the lesser included, it must be given. And at least that case law would apply here. I'm going to... Thank you. ...reduce the balance of my time. We'll hear from the government. Thank you. You must be Mr. Lopez. Yes, Your Honor. Good morning. Good morning. My name is John Lopez. I represent the United States in this matter. Based upon the evidence as a whole and in light of the very favorable and deferential standard for the government as set forth in Jackson and recently reiterated by this Court in Nevels, the jury was entitled to find premeditation based upon a number of points, including the following, that there was, as Judge Kaczynski pointed out, sufficient evidence of premeditation from the time that the defendant stood next to the victim's car immediately prior to the shooting, that the jury was entitled to reject the defendant's claim for the first time on appeal that the defendant acted in a frenzy at any point. Could you explain to me the interplay between provocation and premeditation, at least the government's position on this? Let's say that the defendant is standing there, which seems to be undisputed. He's standing there by the side of the window and it looks like some conversation is taking place. I mean, it's very likely that they talked because he wasn't just standing there. And let's say something is said during that conversation that makes him angry. He's called a name or something is said that one would call provocation. How does that relate to premeditation? Does that negate premeditation? Does it invite premeditation? And let's say then what happens is as the facts show, he goes back to his car, reaches under the seat of his truck, I guess. Yes? In the back seat of his truck. Okay. So he reaches in under the back seat of the truck. He pulls out a rifle, comes back, and shoots him. And let's imagine that it's because of something that was said during that one conversation that one minute or so that he conversed. How do those two interplay? The fact of provocation and again speaking in hypothetical terms because there's no evidence of provocation in this case, the fact of provocation does not per se eliminate a finding or preclude a finding  It depends on the circumstances of the case. All that's required to prove first degree murder is that the defendant formed the intent to kill and had an opportunity to reflect and based upon the evidence as a whole. So can you be provoked into a premeditated killing? So let's say something is said to him, let's say he's called a very offensive name and it makes him very angry, it makes him shaky, it makes him you know and he very upset and he then heads back gets his rifle comes back and shoots and maybe shoots radically because he is angry. Does that negate premeditation? No Your Honor I submit that that absolutely does not preclude a finding of premeditation. For example in the Sinclair case the Fourth Circuit case although there is a temporal distinction between the facts of this case and that case the defendant got in a bar fight with the victim apparently left the club was gone only a matter of minutes retrieved a weapon apparently returned to the club and killed the victim. I submit that in that case there was clearly evidence of provocation. There was a bar fight I don't know the cause of the fight but there was a fight there was clearly provocation and the Fourth Circuit found over the defendant's argument that there was premeditation despite the defendant's claim that the defendant was acting in a rage as a result of the provocation from the fight. It seems that well first of all you said at one point that there has to be an opportunity to reflect that's not good enough there has to be an actual reflection right? That's correct Your Honor based upon So the fact that you have an opportunity to reflect is not sufficient? The opportunity alone is not sufficient to allow the jury to draw the inference that although we don't have any idea what he was thinking when he we don't know what happened to the car and we don't know what he was thinking when he went back and we and the usual things that are that tend to show premeditation are in here we have basically most obviously we have no idea what the motive was can they fill that vacuum with the notion that he was thinking about when he went back without some more evidence of that? It's a very ephemeral thing there's no doubt about it but Yes Your Honor I submit that's the case there's no requirement as the court is aware of evidence of motive it's not an element and it's not required in this particular case yes the defendant's actions after he stood at the victim's car indicate that there was some sort of thought involved he certainly had the time as appellant's counsel conceived he certainly thought I'm going to go get my gun and kill those people that's sure but apparently premeditation has another element a very ephemeral element the second thought the reflection right and what is there about this that will allow them to say beyond a reasonable doubt that that occurred? well the defendant the defendant's actions were incremental Lauren Clark at ER 404 testified that there was a substantial distance between the vehicles can you clear up one fact for me yes while you're relaying the series of facts that you argue support premeditation in your petition for re-hearing you say that agents learn that the defendant may have been at the same party with OC and JT was there actual evidence that they were or were not at that same party in Greasewood? that is unclear was there evidence in the record because you say that agents learn that they may have been at the party is that the testimony that's in the record that they may have been at the same party I don't I can't cite the court through evidence in the record that they were at the same party so they were not the evidence in front of us is that they were not at the same party that is given the lack of affirmative proof that they were at the party you have to say yes or no there is evidence in the record that shows it is just a fact there is not evidence in the record is there any evidence as to who OC was and who JT was because I like judge he went to her side of the car and then talked I don't know to them or whoever he talked to and then he walked back and then he came back and he went to JT's side of the car and shot at JT first so is there any evidence about who these people are what their relationship is or anything like that there is not evidence of the defendants relationship with the victims the only evidence of any relationship is that Lauren Clark and Jessica Lee recognized the victims as fellow high school students of theirs but there is no evidence in the record of what the defendants relationship was with the victims other than the fact that there was apparently some intent to get together that evening when their cars passed each other but that does not there's no other evidence about the defendants relationship with the victims with regard to the victims car turned around first or some evidence that they both turned around at the same time is that right your honor Lauren Clark's testimony was when the vehicles passed each other initially that the victims turned around first and then the defendant turned around as the victims turned around then as they passed each other the second time the defendant flashed his light well if that were the sequence that is less that is a weaker inference that they actually had any prior plan or that he knew these people because I suppose if you're   where the victim turned around and then the defendant turned around and then followed them onto a side road to continue answering your question your previous question about evidence of premeditation as evidenced in the defendant's conduct leading up to the murders he took a number of affirmative steps which indicated that each opportunity he had an opportunity to reflect on his actions but again you said opportunity I want to know what their proof is that he did it as opposed to had an opportunity well the only way we know whether someone actually reflects is if they say I am reflecting I am planning to kill you and doing all of that now I mean I don't know I say a lot of us that have been in court for a very long time I've never actually seen someone come up to the door and say I'm planning to do this right now and I thought about it all the way back to the car when I got the gun in here I'm doing this well there are such things as people who can testify that they saw him behave in a calm deliberate manner as the government purported to do in the brief on appeal when they said there was such evidence which would have been as the panel said sufficient at which point it became clear that the government was misrepresenting the facts but those facts would have been sufficient so that would answer Judge Callahan's question as to whether such evidence can exist other than with a defendant admitting it you know I read that part of the panel opinion and I wasn't entirely persuaded were you? I mean does calmness have something to do with deliberation? Well the government obviously thought so didn't it? Your Honor the government's characterization may have but we're now here now I'm just wondering why does being calm and cold blooded suggest deliberation whereas whereas being excited suggests no deliberation I don't quite get it well Your Honor probably a reasonable jury might be able to see the distinction between the two kinds of objective behavior that's correct behavior when the defendant is behaving in a manner that does not evidence frenzy the converse the jury can draw the inference that the defendant is calm specifically you don't have to be calm to deliberate you can deliberate you can be quite excited and still deliberate people do it all the time they're in life threatening situations you know you're climbing a mountain one of your pylons slips and then you're in life you're in mortal danger at that point and you have to think clearly even while excited I'm not sure I see those as flip sides of each other your honor I agree that one does not have to have a calm demeanor to premeditate what the government was arguing in its answering brief on direct appeal was that the defendant's conduct as described by Warren Clark did not demonstrate that he acted in a frenzy Warren Clark didn't say anything hardly as to the actual interaction he said he saw some black figure moving he saw the defendant walk back to the car retrieve the rifle walk back towards the victim's car and this time even though he was standing at the victim's driver's side door this time walked and apparently targeted the passenger that's another indication it would still be I understand as Judge Callahan says that there's no direct evidence of premeditation and there hardly ever will be the question is what is and you began to say what is the evidence circumstantial evidence of premeditation not of opportunity to premeditate but of premeditation that a jury could rely on to find beyond a reasonable doubt that it occurred well one is that he went back to the car for the gun another is that he walked around the car that's correct the fact that he shouldered the rifle and apparently with very deliberate purpose aimed the rifle he struck the victim six of eight or nine times and on that point but wait can you just address we're sitting here well after the fact and you're characterizing but what the prosecutor were you the prosecutor I don't think so what the prosecutor told the jury interpreting the instructions is that all the government has to prove is that the amount of time that there was enough time for the person to form the intent to kill and to be conscious of the killing what did the defendant do in this case he goes up to the driver's side he talks to someone in the vehicle he walks back to his truck he gets the rifle he walks back around the car to the passenger's side puts it up on his shoulder fires multiple times into the vehicle he knew exactly what he was doing he intended to kill the occupants of the vehicle that's premeditation he intended it he was conscious of it that's first degree murder is that a correct interpretation application of premeditation your honor that is a correct characterization of the evidence and is a statement of premeditation as the ninth circuit model instruction 8.89 says that the killer has to be fully conscious of the intent and to have considered the killing if that particular argument may have been inartfully made but the jury was properly instructed on first degree murder and the prosecutor arguing the inferences and the evidence and applying it to the definition of first degree  would be harmless if the prosecutor inartfully conflates intent to kill with premeditation which seems to be the thrust of what the prosecutor was doing so why wouldn't that have some weight in whether or not the jury was confused and therefore reached an inference of premeditation that was improperly skewed well again the jury was correctly instructed by the court on the definition that's not answering the question the question is why doesn't it skew it if the prosecutor who represents the United States comes in and as a matter of law conflates the two elements if the prosecutor doesn't understand it and misarticulates it why would a lay jury be able to sort it out and follow the instructions when the prosecutor herself or himself couldn't do it as a professional lawyer your honor based upon the evidence there was evidence that the ample evidence that the defendant had the opportunity and took affirmative steps which indicated that he considered the killing and implemented his plan to carry out you said that but the judge explained it properly what did the judge say about premeditation your honor the judge instructed the jury consistent with ninth circuit model instruction eight point eight nine what did he say about premeditation your honor I believe that he told the jury that the defendant had do you know what he told the jury I'm not sure you believe I don't have the instruction in front of me your honor I don't think he said anything other than they must find premeditation but I might be wrong what's this premeditation didn't he tell didn't he tell the jury premeditation means planning or deliberation I guess I have the instruction that's correct your honor I believe that's correct so he told the jury he had to plan and and premeditate yeah that's correct deliberate what did the defense what did the we talked about what the prosecutor argued what did the defense argue in terms of in their closing argument about this issue the defense did not raise the issue of premeditation the only argument the defense counsel made on behalf of the defendant was that the defendant was not the murderer the defense strategy was to portray the government's position as unreliable either because they had premeditation or that they had some motivation to lie or that they were drunk or a combination of the above and was there an objection was there an objection to the prosecutor's argument about premeditation no your honor there was no objection during the prosecutor's closing argument so the prosecutor says what it was she right it was her yes your honor says what she says there's no objection there's no chance to correct at that point and do we infer from that that people sitting in the courtroom understood the prosecutor's argument to be what she was saying is there you have premeditation in the sense that you can draw the influence of premeditation this was argument rather than instruction that's correct your honor this was again the prosecutor when the prosecutor made those statements she was arguing the application of the facts that the jury could draw the inference that the defendant had premeditated the killing and again the court instructed the jury properly the defense did not make any argument concerning deliberation whatsoever or premeditation whatsoever the defense's only argument at trial to the jury was that it was misidentification that the defendant was not present at the scene are you what other case would you regard as most similar to this one in which a first degree murder was upheld given what strikes me about and I said this before but what's really odd about this case is we have no idea what the motive was what the relationship was what what the reason for the murder was and so on is there any case with that many gaps holes in terms of the things one would ordinarily know that would lead to a conclusion of premeditation your honor the Shaw case from the 5th circuit which involved a defendant apparently randomly sniping at a vehicle as it passed by in that case the defense argued that the defendant was shooting at deer and that it was apparently an accidental shooting there was no apparent motive for that random killing and the 5th circuit found that there was premeditation in support of a first degree murder conviction wasn't that Sinclair case you cited pretty good too yes judge I submit that it is the only Sinclair Sinclair case is very similar on its facts with one important difference the first in Sinclair there was irrefutable evidence of provocation because the defendant and the victim were fighting before the defendant was ejected from a bar and then returned with a gun to the defendant moments later so would that be an appropriate time to give a voluntary manslaughter instruction would those be facts sufficient to give rise to giving a voluntary manslaughter instruction in that case where there was affirmative evidence of provocation I I agree that a voluntary manslaughter instruction may have been appropriate in this case again there is an absolute dearth of evidence of provocation as the court heard defense counsel never argued does it matter that the defendant was that the defense was that he didn't do it as opposed to that he was provoked does that matter in terms of what a court considers in deciding whether to give a voluntary manslaughter instruction absolutely I think it's a very relevant factor the first hurdle is that there has to be some evidence in the record of provocation to warrant the instruction in the first place but again this entire line of argument which is raised on appeal was not introduced at any point there was no request for provocations voluntary manslaughter instruction right there was a request for the instruction that's correct your honor there was a request which the court denied and at that point defense counsel apparently abandoned any argument about voluntary manslaughter however the defense never raised again any issue any argument to the jury about premeditation but you would concede let's say perhaps that you know sometimes defendants take defense postures that don't work but there are still facts before a jury let's say in our fight before then went out to the car in that situation the court still has to if there is evidence even though the defendants not taking that position has to consider whether to give that voluntary manslaughter right I agree again that is not not the case here because there was no evidence of provocation I'd like to point the court the jury was not instructed on transferred intent is that true I am not sure if they were that issue was transferred intent with respect to the driver of the vehicle I didn't see it I don't believe that was an issue it was an issue raised on appeal the prosecutor did make that argument closing argument the prosecutor said that the intent to kill one of them which presumably is JT transfers to and the intent to kill OC right but they weren't instructed on that were they I don't know that they were the defense conceded on direct appeal that that was not an issue what they were instructed was that you can find him guilty of first-degree murder even if you find him  guilty of first-degree murder with respect to the defendant's intent about five months after the murders the defendant had a confrontation with an individual named Larry Begay not a relation of his and the defendant stated that I killed some people and I got away with it and I can kill again the jury was entitled to take that piece of evidence as an insight into the defendant's mindset which sort of I don't understand how that addresses anything having to do with premeditation it indicates or at least demonstrated to the jury     guilty of first-degree murder with respect to his intent to kill another person I thought we had a case law that suggests that you can't back stop premeditation with a greater picture of who the defendant is it's something that the jury was entitled to consider maybe if not imputing premeditation are you asking us to put that in the calculus of premeditation put that statement well apart from I killed somebody are you asking us to put into the premeditation calculus and I could kill somebody again only to the extent that the defendant was threatening to kill another person in the future maybe that would be relevant if the next day he went out and killed somebody else but how is that relevant to a murder that took place or the statement it certainly it certainly refutes in part the defendant's claim at least his counsel's claim that the defendant simply acted on an impulse out of out of character well not necessarily I mean it could mean you know I killed somebody in a rage before got away with it and now I'm emboldened and now that I know that I can get away with killing people I'm going to do it deliberately that's certainly one possible inference I mean I guess another inference could be well I'm threatening to do this deliberate killing now and let me tell you I've done this before the same thing before which is another I suppose another inference but it's pretty weak all of it Your Honor the evidence as the court is aware and as Neville's recently reiterated the court has to look at all of the evidence as a whole the evidence in the totality the evidence that the defendant clearly appeared to have some business with the victims signaled isolated the victims on the road Why does that help you in premeditation? I don't understand that because if he premeditated and had business he would have taken the gun to the car in the first place. Why doesn't that show that if intent were formed the intent was formed at the car not before The government's best argument is and I submit that the jury was entitled to find premeditation as you point out from the point the defendant stood   between the time he left the car and the time that he killed the people. Now, I agree there's time and opportunity. You know, what other evidence is there that it was deliberate planning rather than acting in an emotional state? I mean, what evidence? Now, I know you say, well, there are two possibilities so you can pick either one. But the question is, if the issue is solely premeditation and you have two anything could have happened, what evidence is there that it's premeditation rather than not acting in a cool and deliberate manner? Or is it just that you say you can take an inference of either one? Your Honor, if you can, the role of this court in conducting a constitutional sufficiency analysis is to construe the facts in favor of the prosecution. Does that mean the answer is none, that there's no evidence as to what happened at between the time he left the side of the car and the time he shot them? And that has to be done entirely by inference? It's circumstantial evidence, and it is drawn by inference, and if this Court concludes that there are two inferences, even reasonable inferences, that can be drawn from the defendant's conduct, then Jackson and Neville's mandate All right. I was just asking the first question. There's no evidence to say it's just a permissible inference. That's correct, Your Honor. You can infer it from his conduct, can't you? His purposeful organized behavior. He wasn't carrying on. He wasn't doing what he did in the insufficient amount of time. That's correct, Judge. Not only is it an inference, I submit the jury, as it did, was entitled to infer that it was a compelling inference. It was a very strong inference. I'm just kind of surprised to hear you say things. I mean, evidence is direct and circumstantial evidence. So you could say there was no direct evidence, but if you say there's no evidence, you lose. No, there is circumstantial evidence, Your Honor. Right. So that's evidence. Isn't the law that that's evidence just like direct evidence is evidence? Of course. And this Court and every circuit has held that premeditation But when you say it is what you also said was that a jury could reasonably infer it either way, but we  beyond a reasonable doubt standard, and that's where I keep getting hung up. Okay. I mean, what is there that would make a jury reasonably conclude beyond a reasonable doubt that this was premeditation? Your Honor, if the question is not whether as Neville clarifies, the question is not whether a jury may have interpreted the evidence and drawn the inferences from the evidence, circumstantial or direct, to reach an acquittal. That's not the analysis. The court on the first prong of Jackson as set forth in Neville's is to view the evidence in favor of the prosecution, not view the evidence in favor of innocence. But to go back to what we were saying before, there are stronger inferences and weaker inferences, and that somehow has to feed into the beyond a reasonable doubt standard. So the fact that a jury could sort of without basis infer, without sufficient basis to meet a beyond a reasonable doubt standard saying, well, it must be that he considered it, can't be the answer. The inference can't be good enough because if it isn't strong enough to support a beyond a reasonable doubt conclusion, no? Your Honor, under the second prong of Jackson, the only way that this Court would reverse could reverse the jury's verdict is to find that no rational prior effect could have viewed the evidence in favor of the prosecution to determine beyond a reasonable doubt that there was evidence of premeditation. Thank you. Thank you. The question  is a vacuum sufficient? And the answer is no. A vacuum in terms of premeditation state of mind is not sufficient to determine a reasonable doubt that     premeditation.      of premeditation state of mind is not sufficient for two reasons. Number one, there is no presumption that any given homicide is a  Number    presumption     crime. Number three, there is no presumption that any given homicide is a crime. Number four, there is no presumption that any given             is a crime. Number six, there is no presumption that any given homicide is a crime. Number seven, there is no presumption that any given homicide is a crime. Number eight, the re is no presumption that a given homicide is a crime. This is a possible case. This is a children's case. This is a children's case.  is a possible case. Number  the    that a given homicide is a crime. This is a children's case. This is a children's case. Number 10, a job in the basement. Go to the basement, work the gun locker, load the bullets, walk back up and shoot him. At that point you premeditate it. Isn't this very much like that case? No. But I can make it like this case. Let's say you find your spouse and there's a gun in the closet comparable to the distance between the two cars. This could be perfectly consistent with a killing that occurs in the face of provocation adequate to drive a reasonable person to kill. Adequate to drive a reasonable person to kill.   evidence that he planned it, why can't reasonable people sitting around a table in a jury room say, yeah, you know, he planned it? If there were any evidence that he planned it, if the evidence is there. Isn't the difference between the two that it could have been either, but you need proof, evidence, that it's premeditated. You don't prove an element of a crime by saying, oh, well, it's possible it could have been proven, but we're not going to have any evidence to prove it. That's why a vacuum is not enough. I'm not sure what Judge Reinhart just said. I'm agreeing with what Judge Reinhart said. I understand, but I didn't understand what he said. The way you prove something is evidence, and you don't go and say, oh,   it could have been proven. You may agree with that, but I don't understand why, because there's not a little balloon over your head with words saying, I'm thinking, I'm deliberating. Maybe that's why most convictions for murder and most charges for murder are second degree, and first degree is rare. Exactly. And what there can be, there's no thought bubble, but there can be planning, there can be motive, there can be a manner of killing. I'm sorry, how much more planning do you need than going to the second degree murder trial? I don't see how reasonable people can draw any other inference.  juries were understood that you need more than what's enough for second degree murder, and they understood what it meant to have a calm, not cool mind, as opposed to doing it with the kind of reflection that gets second degree murder, maybe every juror would have gone the other way, maybe not Judge Kaczynski. Well, I agree, and I think that if ten jurors were told that intent to kill is premeditation, then ten jurors would have reached the same  but that's not the law. Well, maybe if Henry Fonda had been on the jury. Say again? Maybe if Henry Fonda had been on the jury. Anyway, we're out of time. Thank you. Thank you. Case resolved. We are adjourned.
judges: Kozinski, Reinhardt, Thomas, Silverman, McKeown